# IN THE COURT OF APPEALS OF IOWA

No. 16-2007
Filed February 8, 2017

**IN THE INTEREST OF A.M. and A.M.,**
**Minor Children,**

**B.B., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A mother appeals the order terminating her parental rights to her four-year-old son and two-year-old daughter. **AFFIRMED.**

Joshua M. Moon of Dutton, Braun, Staack & Hellman P.L.C., Waterloo, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Timothy M. Baldwin of Juvenile Public Defender's Office, Waterloo, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A mother, Brittany, appeals the juvenile court's order terminating her parental rights. Two children are at issue—her son, A.M., born in July 2012, and her daughter, A.M., born in April 2014.[1] She challenges the statutory grounds for termination under Iowa Code section 232.116(1) (2016), argues termination was not in the children's best interests under section 232.116(2), and contends there was clear and convincing evidence termination of her rights would be detrimental to the children because of the closeness of the parent-child relationship under section 232.116(3)(c). Finding the mother's arguments unconvincing, we affirm the juvenile court's order.[2]

Police arrested Brittany in late April 2015 for violating a court order prohibiting her contact with a paramour. At that time, the Iowa Department of Human Services (DHS) workers found unsanitary conditions in the home she shared with her two young children and removed them from her care. Other adults staying in the home reported Brittany left the children alone in a bedroom most of the day.

Brittany had been diagnosed with depression, anxiety, obsessive-compulsive disorder, bipolar disorder, and borderline personality disorder. Brittany, who was expecting her fourth child in June 2015, could not take her

---

[1] Brittany has a total of five children. One child is older than A.M. and A.M. and lives in Texas. Brittany gave birth to two younger children while A.M. and A.M. were removed from her care.

[2] We review termination orders de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's findings of fact, especially when witness credibility is at issue, but we are not obliged to accept them. *Id.*

prescribed medications for those conditions while she was pregnant. Brittany gave birth to J.B. in mid-June.[3]

The juvenile court adjudicated A.M. and A.M. as children in need of assistance (CINA) in August 2015. The children have not been returned home since that time. The DHS case worker identified Brittany's mental-health problems, her struggles with basic parenting skills, and her unhealthy relationships with men[4] as the reasons for their continued removal.

In November and December 2015, the DHS reported to the juvenile court that Brittany and the children's biological father, Timothy, were making progress in their parenting roles. In recognition of that progress, in January 2016, the court deferred permanency for six months. But in February, Timothy fell back into his pattern of substance abuse and was arrested for a probation violation. While Timothy was incarcerated, Brittany's parenting progress stalled. She missed counseling sessions and could not consistently apply safe parenting skills during visits with the children. Complicating the situation, Brittany was expecting another baby in early September 2016 and had a high-risk pregnancy.[5]

---

[3] J.B., who was removed from Brittany's care in early 2016 due to safety concerns, is not a subject of this appeal.

[4] During the CINA case, Brittany had no-contact orders against three different men, two of whom were fathers to her children.

[5] The DHS scheduled limited visitation during late May and early June 2016 because Brittany's doctor recommended strict bed rest. Nevertheless, Brittany took the city bus eight times in two weeks to visit Timothy in jail. Her fifth child, N.M., was born prematurely at the University of Iowa Hospitals and Clinics in mid-June 2016. Brittany stayed in Iowa City while the infant remained hospitalized and told the DHS she could not return to Waterloo to attend visits with A.M. and A.M. But the DHS worker later learned Brittany did return to visit Timothy in jail on three occasions.

In April 2016, the State filed a petition to terminate Brittany's parental rights to A.M. and A.M., citing subsections 232.116(1)(a), (b), (e), and (h).[6] At that time, both children were under four years of age. The juvenile court held a permanency and termination hearing on August 29, 2016. By the date of the hearing, Brittany's son had turned four years old. At the hearing, the State dismissed its allegation under subsection (a). On November 14, 2016, the juvenile court issued an order denying the State's request to terminate under subsection (b) and granting termination of parental rights concerning Brittany's daughter under subsection (h) and both children under subsection (e). Brittany now appeals.

In examining Brittany's claims, we follow the three-step termination framework set out in *In re P.L.,* 778 N.W.2d 33, 39 (Iowa 2010). First, we must determine if the evidence proves one of the enumerated grounds for termination in section 232.116(1). *Id.* at 40. If a ground is proven, we must consider the best-interests factors in section 232.116(2). *Id.* Finally, if those factors require termination, we must decide if any countervailing reasons exist under section 232.116(3) to forego termination. *Id.*

**Statutory ground.** When the juvenile court terminates parental rights on more than one statutory ground, we may affirm if we find clear and convincing evidence supports any of the subsections cited by the juvenile court. *In re D.W.,* 791 N.W.2d 703, 707 (Iowa 2010). In this case, we find clear and convincing evidence under section 232.116(1)(e).

---

[6] The petition also sought to terminate the rights of their biological father, but he is not a party to this appeal.

To terminate parental rights under subsection (e), the State must show: (1) the children have been adjudicated CINA under section 232.96, (2) they have been removed from the parent's physical custody for a period of at least six consecutive months, and (3) there is clear and convincing evidence the parent has not maintained significant and meaningful contact with the children during those months and has made no reasonable efforts to resume care of the children despite being given the opportunity to do so. Iowa Code § 232.116(1)(e). The code section defines "significant and meaningful contact" as an "affirmative assumption by the parents of the duties encompassed by the role of being a parent." *Id.* Those affirmative duties include making a genuine effort to complete the responsibilities prescribed in the case permanency plan. *See In re T.S.*, 868 N.W.2d 425, 436–37 (Iowa Ct. App. 2015).

The juvenile court found Brittany "failed to show a continued genuine interest in her children or a genuine effort to complete the responsibilities prescribed in the case permanency plan." On appeal, Brittany contests this finding, insisting she was "able to maintain a clean apartment" and "continued to show interest in her children even throughout a complicated pregnancy that required her to be on bed rest at the University of Iowa Hospital and Clinics."

After our de novo review of the record, we reach the same conclusion as the juvenile court. Brittany did not exert genuine, sustained efforts to meet the expectations in the case permanency plan that would ensure the safety of her children. The DHS case worker estimated Brittany's overall compliance with recommended services at only sixty percent. During visits, Brittany exhibited frequent lapses in supervision of her three young children, exposing them to

potentially harmful situations. She was unable to treat her mental-health conditions by medication due to her pregnancies and attended only half of the scheduled counseling sessions. And most significantly, she allowed her volatile relationships with men to interfere with regaining custody of her children. Her misplaced priorities are evident from her repeated visits to see Timothy in jail when doctor-ordered bed rest and N.M.'s premature birth limited her contact with A.M. and A.M. We affirm termination under section 232.116(1)(e).

**Best interests.** Having determined the State satisfied a statutory ground for termination, we turn to Brittany's argument that severing the parent-child bonds did not serve the best interests of A.M. and A.M. *See* Iowa Code § 232.116(2). In determining best interests, we must consider the children's safety, the best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *See P.L.*, 778 N.W.2d at 37. Our consideration of these factors leads us to conclude termination would promote the well-being of A.M. and A.M.—both in the short term and the long run.

The DHS worker testified Brittany continued "to put herself in situations with men that are very unhealthy and put her children at risk" and "after providing her with services it was obvious that she struggled to learn basic parenting skills needed to keep the children safe." According to the DHS reports, during their sixteen months in family foster care, the children have "come a long way" developmentally. A.M. and A.M. need a safe place to grow up, and Brittany has proved herself unwilling or unable to provide it. *See A.M.*, 843 N.W.2d at 113 (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring

specially), which identified children's safety and need for a permanent home as the "defining elements" of their best interests). Accordingly, we find termination of her parental rights was in the children's best interests.

**Closeness of parent-child bonds.** Having established termination of Brittany's parental rights is in the children's best interests, the last step of our analysis is to decide if any factors in section 232.116(3) apply to preclude the termination. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). Brittany points to subsection (c), asserting the DHS reports entered into evidence "repeatedly reference the excitement experienced by the children when they attended visits with their mother." Section 232.116(3)(c) allows the juvenile court to refrain from terminating parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." This factor is permissive, not mandatory. *See M.W.*, 876 N.W.2d at 225.

We agree the record reveals A.M. and A.M. enjoy a warm bond with their mother. But we do not find the closeness of the relationship between Brittany and her children outweighs their need for a safe and permanent placement. Accordingly, we affirm the termination order.

**AFFIRMED.**